```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO.  12-24521-CIV-COHN
                                       (11-20767-CR-COHN)
                              MAGISTRATE JUDGE P.A. WHITE

HUGH JONES, JR.,                       :

        Movant,                        :

v.                                     :         REPORT OF
                                             MAGISTRATE JUDGE
UNITED STATES OF AMERICA,               :

        Respondent.                     :
_____
```

<u>Introduction</u>

This matter is before this Court on the Movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence entered in Case No. 11-20767-Cr-Cohn.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The court has reviewed the motion [CV-DE#1], the government's response thereto [CV-DE#10], Movant's motion for leave to amend [CV-DE#12], the government's response thereto [CV-DE#14], the evidence adduced at the evidentiary hearing in this matter, and all pertinent portions of the underlying criminal file.

1

<u>Claims</u>[1]

Ground One:     That   his   plea   was   unknowing and
                involuntary, because  it  was  based  on
                ineffective assistance of counsel.

Ground Two:     That  his  counsel  was  ineffective in
                failing  to  file  a  direct  appeal  after
                being requested to do so.

Ground Three:   That the district court's finding of his
                career offender status violated his Sixth
                Amendment rights.

## Procedural History and Factual Background

Movant  was  charged  with  one  count  of  conspiracy  to  possess
crack  cocaine  with  the  intent  to  distribute,  two  counts  of
possession  with  intent  to  distribute  crack  cocaine,  and  one  count
of  possession  of  ammunition  as  a  convicted  felon  [CR-DE#13].
Pursuant  to  a  written  plea  agreement,  Movant  pled  guilty  to  the
three  counts  of  drug  charges  [CR-DE#60].   In  the  plea  agreement,
Movant  acknowledged,  *inter  alia*,  that  his  applicable  federal
sentencing  guideline  range  would  be  determined  by  the  Court  relying
in  part  on  the  results  of  a  pre-sentence  investigation  report,
which  investigation  would  not  commence  until  after  his  guilty  plea
was  entered.   Movant  further  acknowledged  that  he  faced  a  statutory
maximum  term  of  imprisonment  of  forty  years  on  two  of  the  counts  to
which  he  was  pleading  guilty,  and  twenty  years  on  the  other.   The
plea  agreement  also  stated  that  Movant  was  aware  that  any  estimate

---

[1]In his original motion, Movant alleges ineffective assistance of
counsel, and then refers the court to his attached memoranda [DE#1, ¶12].
Construing movant's *pro se* pleading liberally in keeping with the dictates of
<u>Haines v. Kerner</u>, 404 U.S. 419 (1972), Movant's memoranda in support of his
original motion appears to raise two claims.  Movant then filed a motion for
leave to amend [CV-DE#12], seeking to assert a third claim.

of the probable sentencing range or sentence that Movant may receive from his attorney was a prediction, not a promise, and was not binding on the Court.  The plea agreement also provided that Movant would cooperate fully with the government and that, if Movant's cooperation was of such quality and significance as to warrant a downward departure from Movant's advisory guideline sentencing range, that the government could make an appropriate motion, either before or after sentencing.  Finally, the plea agreement contained a waiver of appellate rights, whereby Movant waived all rights to appeal any sentence imposed, unless the sentence exceeded the maximum penalty permitted by statute, or was the result of an upward departure and/or an upward variance from the advisory guideline range that the Court established at sentencing.

Movant appeared for his change-of-plea hearing on January 13, 2012, and was placed under oath [CV-DE#10, Exh.A].  Movant stated that he understood that he was under oath and that, if he answered any of the Court's questions falsely, his answers might later be used against him in a prosecution for perjury or making a false statement.  Movant again acknowledged that he faced a statutory maximum term of imprisonment of forty years on two of the counts to which he was pleading guilty, and twenty years on the other.  Movant further acknowledged that he had discussed the case at length with his attorney, including the possibility of a trial and the likelihood of success at trial, particularly in light of how Movant's co-defendant's plea would affect the outcome of a trial.[2]  Movant stated that he understood that his advisory sentencing range under the federal guidelines would be determined by the Court,

---

[2]As the record reflects, Movant's co-defendant had pled guilty and agreed to cooperate fully with the government, including providing the government with information regarding the circumstances of the crime, and had further signed a factual proffer statement, implicating Movant in the crime CR-DE#52, 54 & 55].

relying in part on a pre-sentence investigation report, which would be conducted the United States Probation Office.  The Court asked Movant whether he understood that the Court was not bound to impose a sentence within the guideline range, that his sentence might be more severe than his guideline range, and that the Court had the authority to impose any sentence up to the statutory maximum, all of to which Movant responded "I do, Your Honor."  Movant then stated that he had fully discussed the terms and conditions of his plea agreement with counsel, that he understood them, and that there were no promises made to him that were not contained in the plea agreement.  Movant further stated that no one had forced or coerced him into signing the plea agreement or into pleading guilty, and that he was pleading guilty of his own free will. Movant also stated that he understood that he was waiving his appellate rights and what that meant, that he had fully discussed the appellate waiver with counsel and that, understanding the affect of the appellate waiver, he still desired to go forward with the guilty plea.  And at the conclusion of the plea colloquy, the Court found that Movant was fully competent and capable of entering an informed plea, that Movant was aware of the nature of the charges and the consequences of his plea, and that Movant's plea was knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offenses charged.[3]  The District Court thus accepted Movant's guilty plea.

A pre-sentence investigation report ("PSI") was prepared in anticipation of sentencing.  Movant's base offense level was 26, because at least 28 grams but less than 112 grams of crack cocaine were involved in his offenses.  However, Movant qualified for a

---

[3]Movant does not contend that he was not competent, that he did not understand the nature of the charges or the consequences of his plea, or that there was not a factual basis for the plea.  Nevertheless, it bears noting that, as the record reflects, the District Court carefully considered all of these issues [CV-DE#10, Exh.A].

career-offender enhancement under the sentencing guidelines, because the offenses at issue were felony controlled substance offenses, and Movant had at least two prior felony convictions for controlled substance offenses.  Accordingly, the probation officer increased Movant's base offense level to 34, as required by §4B1.1 of the federal sentencing guidelines.  The probation officer then subtracted three points for timely acceptance of responsibility, which resulted in a total adjusted offense level of 31.  Based on a total offense level of 31 and a criminal history category of VI, Movant's guideline sentencing range was 188 – 235 months' imprisonment.

Movant appeared for sentencing on March 30, 2012 [CV-DE#10, Exh.B].  Movant stated that he had received and reviewed a copy of the pre-sentence report, and Movant's counsel indicated that the defense had no objections.  The District Court then found, *inter alia*, that Movant's advisory imprisonment range was 188 – 235 months, and counsel requested that Movant be sentenced at the low end of that guideline range.  When asked if he wished to be heard, Movant apologized for his conduct and promised to never do it again, but said nothing about his sentence, or about his guideline imprisonment range.

At the conclusion of the sentencing hearing, the District Court sentenced Movant to 188 months' imprisonment, the low end of Movant's guideline sentencing range.  Judgment was entered by the Clerk on that same day [CR-DE#67].  No direct appeal was ever filed.  Movant's judgment and sentence thus became final on April 13, 2012, when his time for seeking direct review expired.[4]

---

[4]See <u>Mederos v. United States</u>, 218 F.3d 1252, 1253 (11th Cir. 2000)(noting that when no direct appeal was taken from the original judgment of conviction, the judgment of conviction became final when the time for filing a direct appeal expired); <u>Akins v. United States</u>, 204 F.3d 1086, 1089 n. 1 (11th Cir. 2000)("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted.")

On December 21, 2012, Movant filed the instant motion to vacate, pursuant to 28 U.S.C. §2255 [DE#1]. In September of 2013,[5] Movant filed his Motion for Leave of Court to Amend §2255 Motion Due to New Supreme Court Case Ruling [DE#12]. As previously noted, on September 17, 2013, the Court granted Movant's motion to amend, subject to any applicable procedural bars [DE#13]. On April 8, 2014, this Court conducted an evidentiary hearing on Movant's claim that counsel failed to file a direct appeal after being requested to do so.

<u>Threshold Issue - Time Bar</u>

Pursuant to 28 U.S.C. §2255(f), as amended April 24, 1996, a one-year period of limitations applies to a motion to vacate by a prisoner in custody under sentence of a court established by an Act of Congress. The limitations period runs from the latest of:

> (1) the date on which the judgment becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims could have been

---

[5]Movant's motion for leave to amend his original §2255 motion was received by the clerk of the court on September 11, 2013, but the signature page and certificate of service indicate that it was executed on September 31, 2013.

discovered through the exercise of due diligence.

In cases where the statute of limitations runs from the date on which the prisoner's judgment of conviction became final, the AEDPA "marks finality as of 'the conclusion of direct review or the expiration of the time for seeking such review[.]'" Gonzalez v. Thaler, ___ U.S. _____, 132 S.Ct. 641, 653 (2012). Where, as here, the prisoner does not pursue a direct appeal, the judgment becomes final when the time for filing a direct appeal expires. See Mederos, 218 F.3d at 1253; see also Akins, 204 F.3d at 1089 n.1.

Here, as set forth above, Movant's judgment of conviction became final on April 13, 2012, which is when his time for filing a direct appeal expired. Movant's original § 2255 motion was filed on December 21, 2012. Movant's claims asserted in ground One and Two, which were set forth in his original motion, are therefore timely. Movant's Motion for Leave of Court to Amend § 2255 Motion, however, was not filed until September of 2013, well-after the AEDPA's one-year limitations period under §2255(f)(1) expired.[6] Movant's claim asserted in ground Three, which was set forth in his Motion for Leave of Court to Amend, is therefore untimely, unless it relates back to the date of the original filing, or unless it was filed within one year of the occurrence of one of the events enumerated in § 2255(f)(2)-(4).

"An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit when it asserts a new ground for relief supported by facts that differ in time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005); see also  Davenport v. United States, 217

---

[6]As previously noted, Movant's motion for leave to amend his original §2255 motion was received by the clerk of the court on September 11, 2013, but the signature page and certificate of service indicate that it was executed on September 31, 2013.  This discrepancy in the record makes no difference, since anytime in September of 2013 is well after the statute of limitations expired.

F.3d 1341, 1344-46 (11th Cir. 2000).[7]  The Supreme Court's decision
in Mayle makes clear that "relation back depends on the existence
of a common 'core of operative facts' uniting the original and
newly asserted claims." 545 U.S. at 659.  Thus, in order for newly-
added claims to bse reviewed on the merits, they must have more in
common with the timely-filed claims than the mere fact that they
arose out of the same trial and sentencing proceedings; rather,
they must arise from the same circumstances as raised in original
filing.  See Davenport, 217 F.3d at 1344.

Here, Movant's new claim presented in his amended pleading has
nothing to do with the claims Movant raised in his original filing.
Movant's amended claim is not entirely clear, but Movant seems to
allege that the sentencing court's finding of his predicate career
offenses violated his Sixth Amendment rights in light of Allenye v.
United States, — U.S. —, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013),[8]
and also perhaps in light of Descamps v. United States, — U.S. —,

_____

[7]The Supreme Court's approach to interpreting amendments to pleadings in
the habeas corpus context set forth in *Mayle* was already the law in the
Eleventh Circuit. See Davenport v. United States, 217 F.3d 1341, 1344-46 (11
Cir. 2000)(holding that a claim which was not part of the original timely
motion to vacate does not relate back to the original claims and is time-
barred if it does not arise out of the same conduct, transaction or
occurrence), citing, United States v. Craycraft, 167 F.3d 451, 456-7 (8 Cir.
1999)(holding that out-of-time claim of ineffective assistance of counsel for
not filing an appeal did not relate back to timely claims of ineffective
assistance of counsel raised in the initial timely-filed §2255 motion), cert.
denied, 532 U.S. 907 (2001).

[8]In Alleyne, the Supreme Court overruled is prior precedent in Harris v.
United States, 536 U.S. 545 (2002), which held that a fact triggering an
increased mandatory minimum penalty was a "sentencing factor" that could be
found by a judge, rather than an element of the crime.  In so doing, the Court
reasoned that Harris could not be reconciled with the rule announced in
Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),
which held that any facts that increase the prescribed range of penalties to
which a criminal defendant is exposed are elements of the crime that must be
proved to a jury beyond a reasonable doubt. Alleyne, ___ U.S. ____, ___, 133
S.Ct. 2151, 2160. The Court thus held that any fact that increases a mandatory
minimum penalty is an element of the crime, and not a "sentencing factor,"
that must be found by a jury. Alleyne, 133 S.Ct. 2151, 2162.

133 S.Ct. 2276, 186 L.Ed.2d 438 (2013).[9]  This claim does not depend on a common core of operative facts uniting it to Movant's original claims of ineffective assistance of counsel, wherein Movant alleges that his plea was unknowing and involuntary, and that his lawyer failed to file a direct appeal after being requested to do so.  As such, Movant's claim asserted in ground <u>Three</u> that the sentencing court's finding of his predicate career offenses violated his Sixth Amendment rights does not relate back to the date of his original filing and, consequently, is time-barred.[10]

---

[9]<u>Descamps</u> is one of several Supreme Court decisions establishing the rules to be applied when determining when a defendant's prior conviction qualifies as one of the enumerated predicate offenses set forth in the Armed Career Criminal Act, 18 U.S.C. §924. In an early decision, <u>Taylor v. United States</u>, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a "categorical approach," requiring sentencing courts to look at the statutory elements of the defendant's prior offenses, not the facts underlying those convictions. <u>See</u> <u>Descamps</u>, 133 S.Ct. at 2283-84 (discussing <u>Taylor</u>). <u>Taylor</u> also developed the "modified categorical approach," which allows sentencing courts to look beyond the statutory elements to "the charging paper and jury instructions" used in a case where the defendant's prior conviction is for violating a "divisible statute"—i.e., a statute that "sets out one or more elements of the offense in the alternative." <u>Descamps</u>, 133 S.Ct. at 2282-85 (discussing <u>Taylor</u> and <u>Shepard v. United States</u>, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)). In <u>Descamps</u>, the Supreme Court held "that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." 133 S.Ct. at 2282. The Court explained that its precedents allowed a sentencing court to consult extra-statutory documents only when a statute contained "multiple, alternative elements" that "effectively create[d] several different crimes," <u>id.</u> at 2285, "not all of which qualify as an [Armed Career Criminal Act] predicate," and the sentencing court had to "determine which crime formed the basis of the defendant's conviction." <u>Id.</u> at 2284.

[10]Although the government has not raised the issue of timeliness of the amended claim, this Court may do so on its own. <u>See</u> <u>Day v. McDonough</u>, 547 U.S. 198, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)(holding that a federal district court may raise <i>sua sponte</i> a forfeited statute of limitations defense to a habeas corpus petition); <u>Jackson v. Secretary for the Department of Corrections</u>, 292 F.3d 1347, 1348-49 (11th Cir. 2002)(holding that the district court possessed the discretion to raise <i>sua sponte</i> the timeliness of a state prisoner's petition for writ of habeas corpus); <u>United States v. Terry</u>, 1997 WL 662477 (N.D.N.Y. 1997)(addressing the issue of timeliness under AEDPA <i>sua sponte</i> although the government did not contend petition was time-barred); <u>Rivalta v. Artuz</u>, 1997 WL 401819 (S.D.N.Y. 1997)(same); <u>Scire v. United States</u>, 1997 WL 138991 (E.D.N.Y. 1997)(same). This Report and Recommendation provides notice and an opportunity for the parties to file any objections to the conclusion that Movant's claim asserted in ground <u>Three</u> is time-barred.

To the extent that Movant may claim that the Supreme Court's decision in _Alleyne_ or _Descamps_ triggered a new limitations period under § 2255(f)(3), any such claim would fail. Neither decision is retroactively applicable on collateral review. See _Chester v. Warden_, — Fed.Appx. 2014 WL 104150, *4 (11th Cir., Jan. 13, 2014)("[B]ecause it is based on the _Apprendi_ rule, _Alleyne's_ rule does not apply retroactively on collateral review."); _Starks v. Warden, FCC Coleman-USP_, — Fed.Appx. —, 2013 WL 6670797, *3 (11th Cir., Dec. 19, 2013)("[T]o the extent Starks is making a claim based on the reasoning in [_Apprendi_], such claims are not retroactive."); _Murphy v. United States_, 2014 WL 1388403, *5 (N.D. Ala. April 09, 2014)(stating that "_Descamps_ has not been applied retroactively to cases on collateral review" and collecting cases); _Reed v. United States_, 2013 WL 5567703, *3 (M.D.Fla. Oct. 9, 2013)(stating that "the Supreme Court has not declared that its decision in _Alleyene_ or _Descamps_ is to be given retroactive effect"); _Strickland v. English_, 2013 WL 4502302, *8 (N.D.Fla. Aug. 22, 2013)(stating that, "[t]he Supreme Court has not declared its decision in _Descamps_ to be retroactively applicable on collateral review, nor has the undersigned found any cases applying _Descamps_ retroactively to cases on collateral review."). Thus, even if Movant's claim that sentencing court's finding of his predicate career offenses violated his Sixth Amendment rights were not time-barred, Movant would still not be entitled to assert a claim under either _Alleyne_ or _Descamps_, since Movant was sentenced long before either case was decided.

---

See _Day_, 547 U.S. at 209-10, 126 S.Ct. at 1684.

<u>Evidence Adduced at Hearing</u>[11]

As set forth above, on April 8, 2014, this Court conducted an evidentiary hearing on Movant's claim that counsel failed to file a direct appeal after being requested to do so. At the evidentiary hearing, Movant testified in his own behalf. The government called Movant's former trial counsel, Herbert E. Walker, III. In sum, the relevant testimony is as follows:

*Movant's Testimony*

Movant testified that counsel initially told him that he had a good chance "at getting around the case." TR., p.6. According to Movant, counsel also told him that he was looking at a sentence in the 63-78 month range. Movant first learned of his status as a career offender just before sentencing, when counsel showed him the PSI. Prior to entering his plea, there had been no discussions about Movant being a career offender.

The first time Movant saw the plea agreement was on the day he entered his plea. Counsel never explained the appellate waiver to Movant. Rather, counsel just handed the plea agreement to Movant, and asked him to read it. Movant recalled the district judge asking him questions about the appellate waiver, which he did not really understand.

Regarding the decision to change his plea, Movant testified that counsel later informed him that his co-defendant had pled guilty and was going to "throw [him] under the bus," so Movant took his only option, which was to enter a plea. TR., p.10. At that point, Movant was under the impression that he was looking at 63-78 months, an impression he got from his counsel.

---

[11]As the record reflects, Movant intended to call his girlfriend, Vontilla Barker, to corroborate his testimony, but Ms. Barker failed to appear at the hearing [<u>See</u> DE#26; TR., pp.84-85]. Movant then requested and was granted ten (10) days to attempt to proffer Ms. Barker's testimony via affidavit [TR., pp.84-85]. The ten (10) days have passed, and Ms. Barker's affidavit has not been forthcoming.

Movant testified that he first discussed his career offender status with counsel shortly before sentencing, when he read the PSI. Movant was confused about the 188 months. Counsel told him there was nothing they could object to, and that the reason it had jumped from 63 to 79 months to 188 to 235 months was because of his career offender status. After sentencing, at counsel's office, Movant asked counsel to file an appeal. In response, counsel told Movant that he had waived his appellate rights.

Regarding his discussions with counsel about filing a direct appeal, Movant explained that he told counsel that he wanted to appeal because he hadn't been aware that he was going to be facing 188 months. What he agreed to was a 63-78 month guideline range. It was not until sentencing that he realized everything was 188 months. When they walked out of the courthouse, Movant asked counsel why it was 188 months and specifically asked him to file a notice of appeal, but counsel told him that he had waived his rights. Later, Movant learned that counsel never filed a direct appeal, and that he only had 14 days to do so. According to Movant, at that particular time, he wasn't aware of that.

On cross-examination, Movant acknowledged that he signed the factual proffer, agreeing that there were audio and video recordings of Movant's drug transactions. Movant also admitted that this was not the first time he had appeared before a judge on a guilty plea. Specifically, Movant had pled guilty a number of times in State court with public defenders. Those proceedings were very brief, and typically resulted in credit for time served, or a few days in jail. They were nothing like what he had in federal court.

Movant explained that he decided to plead guilty because of what happened with his co-defendant. Counsel had told him that the government had been calling to see if Movant wanted to cooperate, but that counsel hadn't given them a response. According to

12

Movant, this was counsel's tactic - to wait and see what happened. But Movant was surprised when his co-defendant accepted the plea, because Movant didn't think that his co-defendant was going to "rat [him] out." TR., p.22.

Movant recalled his plea colloquy, and acknowledged that he had been placed under oath. Movant further acknowledged that the transcript was correct, that he had answered affirmatively to the Court's questions, and that he did in fact understand the maximum penalties that he was facing. Movant also admitted that he had discussed his case with his lawyer, and the likelihood of success at trial. Specifically, counsel had been telling Movant that the government wanted him to testify against his co-defendant, but when his co-defendant took a plea and decided to testify, that's when the turn of events took place.

Movant specifically acknowledged that he answered affirmatively to all of the Court's questions regarding how his sentence would be determined, and how the sentencing guidelines worked, and that he told the Court that no one had made any promises to him that were not contained in the plea agreement. He also admitted signing the plea agreement, wherein he acknowledged understanding the maximum penalties he faced, and which states:

> the defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether the estimate comes from the defendant's attorney, the office, or the Probation Office, is a prediction, not a promise and is not binding on the Office, the Probation Office or the Court.

[CV-DE#10, Exh.A].

Finally, Movant claimed that his girlfriend, Vontilla Barker, was present "pretty much" every time Movant met with counsel. TR., p.34. According to Movant, Ms. Barker was there when he discussed the facts of his case with counsel and, although there were maybe

a few times she wasn't there, the majority of the time she was always in the room when he was talking to Mr. Walker.

*Counsel's Testimony*

Movant's former trial counsel, Herbert E. Walker, III, also testified. Mr. Walker testified that he obtained his law degree in 1988. Mr. Walker gained his initial experience practicing law in the New York/New Jersey area before relocating to Miami, where he took a position with the State Attorney's office. Mr. Walker worked his way up through the various divisions at the State Attorney's office, and eventually became a division chief. He also traveled throughout the state, teaching trial practice. Mr. Walker then went into private practice as a criminal defense attorney in 2007, and began handling federal, as well as State cases.

Mr. Walker began representing Movant in November of 2011 in the instant matter. The two entered into a retainer agreement. Mr. Walker agreed to allow Movant to pay in installments, but Movant never completed making the payments.

Mr. Walker met with Movant several times during the representation, primarily at Mr. Walker's office, but sometimes at the mall where Movant worked. Movant's girlfriend sometimes also came to Mr. Walker's office, but it is Mr. Walker's practice to have girlfriends or family members sit in the waiting area while he speaks with the client. Mr. Walker never discussed the details of Movant's case, including whether or not they were going to go to trial, whether Movant's co-defendant might be willing to testify, or what type of sentencing exposure Movant had due to his prior felonies, in the presence of Movant's girlfriend.

Mr. Walker first discussed Movant' sentencing exposure with him early in the case, also sometime in November of 2011. In November or December of 2011, Mr. Walker specifically discussed Movant's status as a career offender with him. At that time, the government was suggesting that Movant's sentencing exposure might

be in the range of 210-260 months, and Mr. Walker had to go through Movant's priors with him and explain that the government would be seeking an enhanced sentence.  Mr. Walker also had to explain to Movant that the jury would be made aware of his priors if he chose to testify.

The government was offering Movant a plea deal early in the case, also in November or December of 2011.  Mr. Walker did not consider it reasonable to make a decision before obtaining the surveillance tapes through discovery, and Movant was confident that his co-defendant would not plead guilty or testify against him. Mr. Walker thus thought they "had at least a shot at trial."  TR., p.48.  The government was then able to obtain a plea from Movant's co-defendant, who had agreed to testify against Movant.  At that point, Mr. Walker was extremely concerned that the original plea offer would no longer be available.  However, according to Mr. Walker, the government was extremely reasonable and agreed to re-offer Movant the terms of the initial plea.  When Movant learned this he was extremely satisfied, because "he knew he was facing massive exposure on these charges."  TR., p.48.

Mr. Walker discussed the factual proffer with Movant.  He also discussed the plea agreement with Movant, line by line.  Mr. Walker explained to Movant what he was agreeing to, and what the government would be seeking in terms of the sentence and what Movant's exposure would be.  Movant signed the plea agreement after he and Mr. Walker went through it together.  Movant never expressed any objection to the contents of the plea agreement, or to what occurred at the change of plea hearing.  Mr. Walker testifed that he also discussed the appellate waiver contained in Movant's plea agreement with Movant, and explained to Movant that he was giving up his right to appeal.

Mr. Walker discussed the PSI with Movant in advance of sentencing as well.  Mr. Walker explained that this is when they

first noticed that the low end of Movant's advisory guideline sentencing range was 188 months, as opposed to the 210 months that the government had suggested. Movant did not ask Mr. Walker to file any objections to the PSI. Both Mr. Walker and Movant were relieved that Movant had still been able to enter into the original plea agreement. They even agreed that Movant would continue to work with one of the case agents, in the hopes of later seeking to further reduce his sentence based on his cooperation.

At sentencing, Movant was given a self-surrender date. Mr. Walker testified that as he, Movant, and Movant's girlfriend walked back to the parking garage, Movant hugged and thanked Mr. Walker, and told him that he would take care of the money he owed. According to Mr. Walker, Movant never asked him to appeal his sentence.

That was the last time Mr. Walker saw Movant. Mr. Walker has called all of the numbers Movant gave him, has called Movant's girlfriend, and has left messages, but no one has called him back. At one point, the case agent even contacted Mr. Walker seeking assistance in locating Movant.

On cross-examination, Mr. Walker re-iterated that he initially thought Movant could have gone to trial, so long as his co-defendant did not testify. However, once Mr. Walker received the discovery with the surveillance tapes, it became clear that they should consider a plea. Mr. Walker explained that he considered it to be in Movant's best interest to plead guilty because Movant had massive sentencing exposure and, in the plea agreement, the government was agreeing to recommend that Movant be sentenced at the low end of his guideline range. Entering a plea also left open the possibility that Movant might further reduce his sentence by providing substantial assistance to the government. Mr. Walker denied that Movant expressed shock when he first saw the PSI, and re-iterated that Movant was thankful that he had been able to enter

the plea, even after his co-defendant had agreed to testify against him.

Mr. Walker also denied that Movant ever asked him to file a direct appeal. Mr. Walker had explained to Movant that, pursuant to the plea agreement, Movant had waived his right to appeal, except under very limited circumstances. According to Mr. Walker, the last time Movant came to his office was about two days prior to sentencing. Movant did not ask Mr. Walker to file an appeal at that time, on the day of sentencing, or after sentencing. At that point, Movant was focused on the possibility of reducing his sentence through cooperation.

Mr. Walker further explained on re-direct that entering into the plea agreement also benefitted Movant because the government agreed to dismiss Count 4 of the Indictment, which charged Movant with being a felon in possession of ammunition, and would have substantially worsened his condition. The government had also been discussing filing a §851 notice, which was never filed as a result of Mr. Walker's plea negotiations.

<u>Standard of Review</u>

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." <u>Id</u>. To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816

(1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under §2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255; see, also, Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999)("[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" )(internal citations and quotations omitted)). However, the movant in a §2255 proceeding must allege reasonably specific, non-conclusory facts that, if true, would entitle him to relief. Aron v. United States, 291 F.3d 708, 715, n. 6 (11th Cir. 2002). Otherwise, no evidentiary hearing is warranted.  Id, 291 F.3d at 714-715 (explaining that no evidentiary hearing is needed when claims are "affirmatively contradicted by the record" or "patently frivolous"); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)(noting that a hearing is not required on claims which are based upon unsupported generalizations or affirmatively contradicted by the record.

Standard for Claim of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result of that deficient performance.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  "To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1356 (11th Cir. 2009).  Reasonableness is assessed objectively, measured under prevailing professional norms as seen from counsel's perspective at

the time.  Strickland, 466 U.S. at 689.  Reviewing courts will thus
not second-guess an attorney's strategic decisions, and "counsel is
strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional
judgment." Id. at 689-90.  To demonstrate prejudice, the defendant
must show that "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would
have been different." Strickland, 466 U.S. at 694. "A reasonable
probability is a probability sufficient to undermine confidence in
the outcome." Id.  Prejudice is thus established only with a
showing that the result of the proceeding was fundamentally unfair
or unreliable. Lockart v. Hill, 506 U.S. 364 (1993).  A defendant
must satisfy both the deficiency and prejudice prongs set forth in
Strickland to obtain relief on a claim of ineffective assistance of
counsel. Strickland 466 U.S. at 697.  Failure to establish either
prong of the Strickland analysis is fatal, and makes it unnecessary
to consider the other. Id.

<u>Discussion</u>

In Ground One, Movant alleges that his plea was unknowing and
involuntary, because it was based on ineffective assistance of
counsel.  Specifically, Movant alleges that counsel advised him
that his guideline sentencing range would be 63 - 78 months, and
that counsel failed to advise him that he would be subject to a
career-offender enhancement under the federal sentencing
guidelines.[12]  Movant further seems to allege that, had he been

---

[12]In his original motion, Movant alleged that counsel misrepresented to
him that the government would not be seeking a statutorily-enhanced penalty
based on Movant having been previously convicted for a felony drug offense;
that is, that the government would not be filing an Information pursuant to
§851.  Movant further alleged that he was in fact subjected to the statutory
enhancement, and that counsel knew he would be [See CV-DE#1, Memorandum in
Support of Motion to Vacate, ¶23].  However, as the record reflects, no §851
Information was ever filed, and Movant seems to have confused the government's
notice of intent to introduce evidence of other crimes under rule 404(b) with
an Information pursuant to §851.  Id.  Movant's Pretrial Narrative Statement
clarifies that Movant's claim is that trial counsel never informed Movant that

properly advised, he would not have pled guilty, and would have insisted on going to trial.[13]

Because a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. Brady v. United States, 397 U.S. 742, 748 (1970).[14] A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

A guilty plea is, however, open to attack on the ground that counsel did not provide reasonably competent advice. Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716 (1980)(citations omitted). A habeas petitioner can thus overcome the otherwise voluntary and intelligent character of his or her guilty plea only

---

he would be subject to the career-offender enhancement under the federal sentencing guidelines [CV-DE#26]. Movant's confusion between the statutory enhancement and the enhancement under the guidelines is understandable in light of Movant's pro se status at the time he filed his original motion, and his claim that trial counsel never informed him that he would be subject to the guideline enhancement is supported by facts that do not differ in time or type from those set forth in his original motion. The Court thus considers this claim on the merits. See Haines, 404 U.S. at 520-521 (1972)(pro se filings should be liberally construed, and are subject to less stringent pleading requirements); see also Dean v. United States, 278 F.3d 1218, 1223 (11th Cir. 2002)(per curiam)(claim that expands facts or cures deficiencies relates back to original filing).

[13]See [CV-DE#1, Defendant's Allocution Memorandum, p.2 (requesting that case be "remanded to before the change of plea hearing and competent counsel should be appointed")]; see also Haines, 404 U.S. at 520-521 (1972)(pro se filings should be liberally construed, and are subject to less stringent pleading requirements).

[14]To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). As noted above, here the Court carefully confirmed during the Rule 11 colloquy that the plea was free from coercion, and that Movant understood the nature of the charges and the consequences of his plea, and these aspects of Movant's guilty plea are not at issue.

if he or she can establish that the advice she received from counsel was not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).

Strickland's two-part test applies when a prisoner contends ineffective assistance led him or her to enter "an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474,477 (11th Cir.1990) (citing Hill v. Lockhart, 474 U.S. 52 (1985); see also Missouri v. Frye, — U.S. —, 132 S.Ct. 1399, 182 L.Ed.2d 379(March 21, 2012)(internal citations and quotations omitted).  The first part of the Strickland test of course asks whether "counsel's assistance was reasonable considering all the circumstances."  466 U.S. at 688.  An attorney has an obligation "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Stano v. Dugger, 921 F.2d 1125, 1149-50 (11th Cir. 1991).  "Judicial scrutiny of counsel's performance must be highly deferential," however, and the courts should make certain "that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  Counsel's advice need not be errorless, and need not involve every conceivable defense; rather, it must simply be within the realm of competence demanded of attorneys representing criminal defendants.  Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983)(citations omitted).

In cases where a guilty plea has been entered, application of Strickland's second prong requires a showing that there is a reasonable probability that, but for counsel's alleged errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 58.  However, the defendant's "mere allegation that he would have insisted on trial . . . ,

21

although necessary, is ultimately insufficient to entitle him [or her] to relief." U.S. v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); see also Hutchings v. U.S., 618 F.3d 693 (7th Cir. 2010); U.S. v. Farley,72 F.3d 158, 165 (D.C. Cir. 1995).   Rather, the defendant must generally come forward with some objective evidence that he or she would not have pled guilty.   Hutchings, 618 F.3d at 697.   Indeed, there must be some showing that the decision to proceed to trial would have been rational under the circumstances. See Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010).  As such, the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine whether there is a reasonable probability that the petitioner would in fact have insisted on trial.   See, generally, Hill, 474 U.S. at 59; Hutchings, 618 F.3d at 697.   In many guilty plea cases, this inquiry will closely resemble the inquiry that the court would engage in to determine whether the result would have been different had the petitioner proceeded to trial, and will generally include assessment of matters such as the strength of the prosecution's case, any available defenses, the plea colloquy and negotiations, and the potential sentencing exposure.   See Hill 474 U.S. at 59-60; Farley, 72 F.3d at 165.   These issues are relevant precisely because they provide circumstantial evidence of the defendant's state of mind in making the plea.   Miller v. Champion, 262 F.3d 1066, 1073 (10th Cir. 2001); see also Singleton v. Sec'y of Dept. Of Corr., 2009 WL 975783, *4 (M.D. Fla. 2009 ("The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial.").   A criminal defendant's subjective statements that he would have proceeded to trial can thus only support a finding of prejudice "if combined with probative, objective evidence" that the result would somehow have been different.

22

Hutchings, 618 F.3d at 697.  The weight of authority holds that a self-serving and conclusory statement by the defendant is insufficient in itself to show prejudice in the context of guilty pleas.  See, e.g., United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir. 1990); United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997); Parry v. Rosemeyer, 64 F.3d 110, 118 (3rd Cir. 1995); United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993); United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993); Bonvillain v. Blackburn, 780 F.2d 1248, 1253 (5th Cir. 1986).

Miscalculation of the federal guideline sentencing range ordinarily does not constitute objectively deficient performance. See United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); see also Mix v. Robinson, 64 F. App'x 952, 956–57 (6th Cir. 2003)(holding that failure to properly calculate guideline range "does not fall outside the wide range of reasonable representation," and is "not a constitutionally deficient performance rising to the level of ineffective assistance of counsel").  However, "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation." United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992).  The failure to advise a defendant of his eligibility as a career offender is thus not per se deficient performance, and must be determined by the facts and circumstances of the case.  United States v. Orange, 536 Fed.Appx. 952, 955 (11th Cir. 2013)(citing United States v. Pease, 240 F.3d 938, 941–42 (11th Cir. 2001); see also United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996)("[A] mistaken sentencing prediction is not enough in itself to show deficient performance, even when that mistake is great, as is the case when an attorney errs about whether his client will be classified as a career offender.  A

23

gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency.").

Here, the Court need not make findings regarding whether counsel in fact advised Movant that his guideline sentencing range would be 63 - 78 months, or failed to advise Movant that he would be subject to a career-offender enhancement under the federal sentencing guidelines. Assuming *arguendo* that Movant could establish that counsel's performance was deficient, Movant cannot satisfy Strickland's prejudice prong. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

As set forth above, in order to establish prejudice, Movant must point to some objective evidence that, but for counsel's alleged misadvice, Movant would not have pled guilty and would have insisted on going to trial. However, Movant offers no hint of any viable defense once his co-defendant had pled guilty and implicated Movant in the crime. See Singleton, 2009 WL 975783, at *4 (noting that the best way to evaluate whether there is a reasonable probability a defendant would have insisted on going to trial is to determine whether the defendant had a viable defense at trial). Rather, Movant had every reason to enter into a plea agreement at that time. And as the record reflects, Movant obtained substantial benefits by pleading guilty. Pursuant to the terms of the plea agreement, the government agreed to recommend that Movant receive the 3-point reduction for timely acceptance of responsibility, and

that Movant be sentenced at the low end of his guideline range.[15] The plea agreement also left open the possibility that the government might support a further reduction of Movant's sentence, depending on the nature of Movant's cooperation. In exchange for Movant's guilty plea, the government agreed to seek dismissal of Count 4 of the Indictment, which charged Movant with being a felon in possession of ammunition. By pleading guilty, Movant avoided having the government seek a statutorily-enhanced penalty on the drug charges.[16] He was also able to remain out on bond pending sentencing, and to obtain a voluntary surrender date thereafter. Under these circumstances, Movant cannot establish that, but for counsel's alleged misadvice, Movant would not have pled guilty and would have insisted on going to trial. See Padilla, 130 S.Ct. at 1485 (requiring some showing that decision to proceed to trial would have been rational under the circumstances); Hill, 474 U.S. at 59-60 (court should look to the totality of the circumstances to determine whether there is a reasonable probability that the petitioner would have proceeded to trial). As such, Movant cannot establish prejudice. Hill, 474 U.S. at 58. Perhaps most significantly, however, Movant stated under oath that he wished to plead guilty, even after being informed that his guideline sentencing range had yet to be determined by the Court, and that he could potentially be sentenced up to the statutory maximum. See Pease, 240 F.3d 941-42 (affirming the denial of a motion to withdraw a guilty plea although counsel misrepresented the defendant's potential sentence because the defendant was informed at the plea colloquy that any sentencing estimate was not binding

---

[15]Movant's advisory guideline sentencing range would have been 262-327 months without the three-point reduction for timely acceptance of responsibility.

[16]As the record reflects, the government never filed the Information pursuant to §851, which would have increased Movant's minimum mandatory sentence from 5 to 10 years, and his maximum exposure from 40 years to life.

on the court); <u>Barker v. United States</u>, 7 F.3d 629, 633-34 (7th Cir. 1993)(finding no ineffective assistance of counsel because any prejudice caused by counsel's misinformation was cured by the district court's thorough examination of defendant at the change of plea hearing); <u>United States v. Hamm</u>, 2012 WL 3643196, *3 (M.D.Pa. 2012)(any prejudice from earlier, off-the-record prediction by counsel was cured by the Court's advisement, and defendant's acknowledgment, regarding applicable sentencing designation, advisory guideline range, and maximum sentence permitted by law). Moreover, Movant's representations during the plea proceeding, as well as the findings by the Court when accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Solemn declarations in open court carry a strong presumption of truthfulness, and a defendant bears a heavy burden to show that the plea was involuntary after testifying to its voluntariness. <u>DeVille v. Whitley</u>, 21 F.3d 654, 659 (5th Cir. 1994); <u>see also United States v. Lemaster</u>, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements.").

In <u>Ground Two</u>, Movant alleges that his counsel was ineffective in failing to file a direct appeal after being requested to do so. Specifically, Movant alleges that he was surprised by the 188-month term of imprisonment, and that he therefore told counsel to appeal his sentence.

The <u>Strickland</u> test applies to claims that counsel was ineffective for failing to timely file a notice of appeal. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 476-77, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The law is clear that counsel's failure to file a

direct appeal after being requested to do so constitutes a constitutional violation of the defendant's Sixth Amendment right to counsel, which entitles the defendant to an appellate proceeding. See Flores-Ortega, 528 U.S. at 477 (citations omitted); Rodriquez v. United States, 395 U.S. 327, 328-330 (1969). There is a presumption of prejudice when counsel fails to follow the client's specific instructions, because the violation of the right to counsel renders the proceeding itself entirely nonexistent or presumptively unreliable. Flores-Ortega, 528 U.S. at 483-85. Under these circumstances, the defendant need not specify the points he would raise on appeal if his right were reinstated, or even establish that his direct appeal would have been arguably meritorious; he need only show that specifically instructed his attorney to file a notice of appeal. Id. at 477, 484-85; see also Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005). "At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Id. at 477.

    When the defendant does not clearly convey his wishes regarding an appeal on way or the other, however, the question of whether counsel performed deficiently is "best answered by . . . asking a separate, but antecedent question: whether counsel in fact consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478; see also Thompson v. United States, 504 F.3d 1203 (11th Cir. 2007)("[W]here a defendant has not specifically instructed his attorney to file an appeal, we must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" (quoting Flores-Ortega, 528 U.S. at 478)). Relying on the Supreme Court's definition of the term "consult," the Eleventh Circuit has held that adequate consultation requires: (1) informing a client about his right to appeal, (2) advising the client about the

advantages and disadvantages of taking an appeal, and (3) making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal. Id. at 1206 (citations omitted); Gomez-Diaz, 433 F.3d at 792.

If counsel has in fact adequately consulted with the defendant, counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. Flores-Ortega, 528 U.S. at 478. If, on the other hand, counsel has not consulted, the court must then ask a "second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id.

A criminal defense attorney is not always under a per se constitutional obligation to consult with his or her client about an appeal. See Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007)(quoting, Flores-Ortega, 528 U.S. at 479). Under some circumstances, the Sixth Amendment requires such consultation; in others, it does not. Otero, 499 F.3d at 1270. The Supreme Court has explained that counsel has a constitutionally imposed duty to consult with the defendant about an appeal only when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Several "highly relevant" factors guide the court's analysis in determining whether rational defendant would want to appeal. See Id. at 486; Otero, 499 F.3d at 1270. These factors include whether there are non-frivolous grounds for appeal, whether the conviction follows a guilty plea, whether the defendant received the sentence she bargained for, and whether the plea agreement waived appellate rights. See Flores-Ortega, 528 U.S. at 486; Otero, 499 F.3d at 1270.

28

In cases where counsel has performed deficiently by failing to adequately consult with his or her client regarding an appeal despite a constitutionally imposed duty to do so, the defendant must still show prejudice. Flores-Ortega, 528 U.S. at 481-486. This of course means that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 482. Accordingly, a defendant alleging ineffective assistance for failure to file a direct appeal must demonstrate that, had he or she received adequate advice about filing an appeal, he or she would have instructed counsel to do so. Id. at 486. In such cases, the prejudice inquiry will frequently overlap with the performance prong of the Strickland analysis. Id. at 486. Thus, although the defendant need not establish that an appeal would have been arguably meritorious, the existence of non-frivolous grounds for appeal is among the "highly relevant" factors in determining whether a rational defendant would in fact have appealed. Id., citing Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Otero, 499 F.3d at 1270 (factors that help a reviewing court to determine whether a rational defendant would want to appeal include whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and whether the plea agreement expressly waived some or all appeal rights).

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned credits the testimony of Movant's counsel, Herbert E. Walker, III, that Movant never indicated to Mr. Walker that he wished to file a direct appeal. Mr. Walker's testimony was clear and unequivocal. Mr. Walker testified that, after sentencing, Movant simply thanked him and stated that he would take care of the money he owed him. Mr. Walker's testimony was consistent as a whole, and also with regard to whether Movant ever indicated that

29

he wanted to pursue a direct appeal.  The Court finds credible Mr. Walker's testimony that he discussed the appellate waiver with Movant prior to sentencing and that, at that point, Movant was more interested in cooperation.  The Court further finds credible Mr. Walker's testimony that Movant never indicated that he wanted to appeal as they were leaving the courthouse on the day of sentencing, and that Movant never contacted Mr. Walker thereafter.

Because the Court finds that Movant did not specifically instruct his attorney to file an appeal, the Court must determine whether counsel was under a duty to consult with Movant about an appeal, beyond the discussions that counsel had with Movant regarding the appellate waiver.  See Otero, 499 F.3d at 1270. Here, the relevant factors weigh heavily in favor of the government.  Movant's conviction was the result of a negotiated, written plea agreement, which tends to confirm that Movant was seeking an end to the judicial proceedings.  Flores-Ortega, 528 U.S. at 480.  Movant was sentenced at the low end of his guideline sentencing range, which is what he had bargained for.  Movant had received a 3-point reduction to his offense level for timely acceptance of responsibility, and had waived his appellate rights as part of the plea agreement.  The government had agreed to dismiss Count 4 of the Indictment and, by entering into the plea agreement, Movant had also avoided having the government file an Information pursuant to §851.  In addition, there did not appear to be any meritorious grounds for an appeal.  Moreover, the plea agreement left open the possibility Movant might further reduce his sentence by providing substantial assistance to the government, Movant had expressed interest only in cooperating, and pursuing a direct appeal would have been considered inconsistent with any efforts at cooperation.  In sum, there was no reason to think that a rational defendant in Movant's position would have wanted to appeal.  Because there was no reason to think that a rational

defendant in Movant's position would have wanted to appeal, and because the Court finds that Movant never reasonably demonstrated to counsel that he was interested in appealing, the Court concludes that counsel was not under a constitutionally imposed duty to consult with Movant regarding an appeal, beyond the discussions that counsel had with Movant regarding the appellate waiver, or after sentencing. See Flores-Ortega, 528 U.S. at 480 (setting forth circumstances under which counsel has a constitutionally imposed duty to consult with a defendant about an appeal).

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and that if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts (hereinafter "Habeas Rules"). Rule 11(a) further provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Id. Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Habeas Rules.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Where a §2255 movant's constitutional claims have been adjudicated and denied on the merits by the district court, the movant must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Where a §2255 movant's

31

constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the movant can demonstrate both "(1) 'that jurists of reason would find it debatable whether the [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir.2001)(quoting Slack, 529 U.S. at 484). "Each component of the §2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

Having determined that some of Movant's claims are barred on procedural grounds and that Movant's remaining claims fail on the merits, the court considers whether Movant is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the instant motion. After reviewing the issues presented in light of the applicable standard, the court concludes that reasonable jurists would not find debatable the correctness of the court's procedural rulings. The court further concludes that reasonable jurists would not find the court's treatment of any of Movant's remaining claims debatable and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is not warranted. See Miller-El, 537 U.S. at 336-38; Slack, 529 U.S. at 483-84; see also Slack, 529 U.S. at 484-85 (each component of the §2253(c) showing is part of a threshold inquiry); Rose, 252 F.3d at 684.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that the motion to vacate be DENIED, and that no certificate of appealability be issued.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report, including any objections with regard to the denial of a certificate of appealability.

SIGNED this 5th day of May, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Alvin E. Entin, Esq.
     Entin & Della Fera, P.A.
     110 S.E. 6th Street, Suite 1970
     Ft. Lauderdale, FL 33301

     Gera R. Peoples, AUSA
     United States Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132